**SIGNED this 04th day of September, 2008.**

_____
**FRANK R. MONROE**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | X | |
| DAVID BRYANT RENO, JR. | X | CASE NO. 04-15828-FRM-7 |
| MILDRED KING RENO | X | |
| a/k/a | X | CHAPTER 7 |
| MILDRED EDISON | X | |
| | X | |
| DAVID BRYANT RENO, JR. | X | |
| MILDRED KING RENO | X | |
| a/k/a | X | |
| MILDRED EDISON | X | |
| Plaintiffs | X | |
| v. | X | ADVERSARY NO. 07-1137 |
| THE CIT GROUP/CONSUMER | X | |
| FINANCE, INC., their successors and/or | X | |
| assigns | X | |
| Defendant | X | |

MEMORANDUM OPINION

The Court held a hearing on the Defendant The CIT Group/Consumer Finance Inc.'s

Motion for Final Summary Judgment.  After the hearing the Court took the matter under advisement.

1

This summary judgment arises out of a Complaint to Determine Validity of a Lien Against Real Property and for Forfeiture of Principal and Interest, Filed Pursuant to Federal Rule Bankr. Pro. 7001(2) and (9). This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. §151 and the Standing Order of Reference of all bankruptcy related matters by the United States District Court, Western District of Texas. This Memorandum Opinion is being issued in accordance with Bankruptcy Rule 7056 as a statement regarding material facts not in genuine dispute and conclusions of law based thereon.

<u>Facts</u>

This action arises from a home equity loan that Plaintiffs obtained from Defendant. Plaintiffs originally purchased the real property and a manufactured home made the basis of this adversary proceeding in September and October 1996 respectively. There were separate lenders for the real property and the manufactured home. The CIT Group held the note on the manufactured home. The Original Certificate of Ownership with respect to the manufactured home dated November 25, 1996 indicates The CIT Group as the first lien holder. Plaintiffs' Exhibit 5. On or about August 24, 2000, CIT extended credit to the Plaintiffs in the amount of $84,960.00 to consolidate the loans on the real property and the manufactured home. In connection with this extension of credit, Defendant required Plaintiffs to sign a Promissory Note together with riders attached ("Note"). To secure repayment of the Note, Plaintiffs executed a Home Equity Deed of Trust together with a Rider to Deed of Trust attached ("Deed of Trust"). The Deed of Trust granted Defendant a security interest in that certain real property legally described as follows:

> Lot Six (6), Block I, ESTATES AT WILBARGER CREEK SECTION THREE, a subdivision in Travis County Texas according to the map or plat of record in Volume 86, Pages 129A-133A, Plat Records of Travis County, Texas (hereinafter referred to

2

as "Property").

The Deed of Trust also granted CIT a lien upon that certain manufactured home legally described as follow:

> USED 1996 CORNERSTONE SILHOUETTE, Bearing Identification Numbers SHA04033A, SHA04033B (Hereinafter referred to as the "Manufactured Home").

A Fair Market Value Statement prepared by CIT and signed by the Plaintiffs claims the value of the Property and Manufactured Home as of August 24, 2000 was $118,000.00-"as fixed by the attached appraisal." Plaintiffs claim that the actual fair market value of the Property at the time of closing is far less than the value necessary to support the constitutional loan-to-value requirement of 80% pursuant to Art. 16, §50(a)(6)(B).

Defendant also provided Plaintiffs a copy of the Form HUD-1 Settlement Statement ("HUD-1") prepared in connection with CIT's extension of credit. The HUD-1 sets forth various charges paid by Plaintiffs at closing. Plaintiffs claim that CIT required payment of fees to originate, evaluate, maintain, record, insure and service the extension of credit in a total amount of $6,423.10 in violation of the home equity statute. The Texas Constitution requires that borrowers pay fees of up to only 3% of the amount loaned pursuant to Art. 15, §50(a)(6)(E).

In addition, the HUD-1 sets forth that Plaintiffs paid $45,312.56 of the total extension of credit to repay in full the purchase money loan to CIT for the Manufactured Home in addition to the amount needed to pay off the Property. Plaintiffs claim that because Defendant extended this credit prior to the effective date of Art. 16, §50(a)(8), the credit it extended was under Art. 16, §50(a)(6) and the manner which the credit was extended violated §§ 50(a)(6)(H) and (Q)(i).

On or about July 13, 2007, Plaintiffs notified bankruptcy counsel for CIT by certified mail,

return receipt requested of CIT's failure to comply with certain obligations placed on Defendant by

Texas Constitution, Article XVI, §50(a)(6)(A)-(Q). Defendant responded to Plaintiffs denying each

of the alleged failures to comply identified by Plaintiffs. Defendant now brings its Motion for Final

Summary Judgment on all counts.

Conclusions of Law

Summary judgment shall be rendered when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-325, 106 S.Ct. 2548, 91

L.Ed. 2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A

dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could

return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). When ruling on a motion for summary judgment, the court

is required to view all inferences drawn from the factual record in the light most favorable to the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348,

89 L.Ed. 2d 538 (1986).

Once the moving party has made an initial showing that there is no evidence to support the

nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere

conclusory allegations are not competent summary judgment evidence, and thus are insufficient to

defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996).

Unsubstantiated assertions, improbable inferences and unsupported speculation are not competent

summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id., see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

<u>Plaintiffs' Section 50(a)(6)(B) Claim</u>

Defendant presently moves for summary judgment dismissing the Plaintiffs' claim that the loan failed to comply with the various provisions of §50(a)(6).  It moves for dismissal of the §50(a)(6)(B) claim on the ground that the loan did not exceed 80% of the fair market value of the homestead at the time the loan was made.  Section 50(a)(6)(B) states:

> Sec. 50 The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except:
>
> (6) an extension of credit that:
>
> (B) is of a principal amount that when added to the aggregate total of the outstanding principal balance of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made.

5

Tex. Const. art. XVI,  §50(a)(6)(B)..

The loan amount was $84,960.00.  Defendant attaches a true and correct copy of the Fair Market Value Statement signed by the Plaintiffs reflecting an appraised value of $118,000.00.  See Defendant Exhibit 2.  Defendant claims that this proves that the amount of the loan was equivalent to 72% of the fair market value of the property securing the loan. Defendant claims that the amount of the loan was based on an appraisal obtained by the Plaintiffs and submitted to Defendants which reflects a valuation in compliance with the home equity provisions.

The Fair Market Value Statement indicates that the borrowers and lender agree that the fair market value is $118,000 "as fixed by the attached appraisal."  Plaintiffs point out that under §50(h) of the Texas Constitution a lender may conclusively rely on the written acknowledgment as to the fair market value of the homestead property if  the value acknowledged  is the value estimated in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6).  Art. 16, §50(h).   Here Defendant failed to produce the appraisal upon which the Fair Market Value Statement was made.  As such, there is no way the Court can find that the Defendant complied with Art. 16, §50(h) and therefore Defendant's motion on this count must be denied.

Plaintiffs' Section 50(a)(6)(E) Claim

Defendant also moved for dismissal of the Plaintiffs' §50(a)(6)(E) claim on the ground that the only fee charged Plaintiffs was the loan origination fee of $2,251.40 and that this amount did not exceed the 3% cap. [Such amount equals 2.6% of the ending loan balance and cannot violate §50(a)(6)(E)].  Section 50(a)(6)(E) states:

Sec. 50 The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except:

6

(6) an extension of credit that:

(E) does not require the owner or the owner's spouse to pay, in addition to any
interest, fees to any person that are necessary to originate, evaluate, maintain, record,
insure or service the extension of credit that exceed, in the aggregate, three percent
of the original principal amount of the extension of credit.

Tex. Const. art. XVI,  §50(a)(6)(E).

Plaintiffs contend that this section was violated because in addition to the origination fee,

they were required to pay other fees that when combined with the origination fee caused the total

to impermissibly exceed 3% of the original principal amount of the loan or $2,548.80 ($84,960.00

x .03).  Both parties provided a copy of the HUD-1 closing statement that reflects the fees paid by

the Plaintiffs.  In addition to the loan origination fee of $2,251.40, the Plaintiffs paid an escrow fee

of $200.00, a document preparation fee of $120.00, title insurance of $877.00, messenger fee of

$35.00, tax certificate fee of $37.50, recording fees of $95.00 and a fee for a certificate of attachment

of $11.00.   These are all charges considered fees paid by a borrower under Title 7, Texas

Administrative Code §153.5 which are regulations promulgated in connection with the home equity

statute.   When added together these additional fees together with the loan origination fee total

$3,626.90 which amount exceeds the 3% cap of $2,548.80.  The Motion for Summary Judgment on

this claim is denied as it appears Defendant charged fees in excess of the constitutional maximum.

Plaintiffs' Section 50(a)(6)(H) and (Q)(i) Claim

Defendant last moves  for dismissal of Plaintiffs' §50(a)(6)(H) and (Q)(i) claim that the loan

was secured by a lien on property other than their homestead i.e. the Manufactured Home, and that

the loan proceeds were used to repay a debt other than one secured by the homestead  i.e. the

personal property loan on the Manufactured Home.   The argument is that in requiring a non-

homestead loan to be paid at closing to itself as the personal property lender on the purchase of the

7

Manufactured Home, Defendant violated  §50(a)(6)(H) which states:

> Sec. 50 The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except:
>
> (6) an extension of credit that:
>
> (H) is not secured by any additional real or personal property other than the homestead.

Tex. Const. art. XVI,  §50(a)(6)(H).

In addition Plaintiffs claim that Defendants violated  §50(a)(6)(Q)(I) as Defendant required Plaintiff to repay a debt which was not secured by the homestead was a personal property loan.  Section 50 (a)(6)(Q)(i) states:

> Sec. 50 The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except:
>
> (6) an extension of credit that:
>
> (Q) is made on the condition that:
>
> (i) the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender.

Tex. Const. art. XVI,  §50(a)(6)(Q)(i).

Defendant counters that at the time the loan was made, the Manufactured Home had already been secured to a foundation and claimed as homestead as admitted by the Plaintiffs  in their Answers to Interrogatories which Defendant attached as Exhibit 3.  As such, Defendant asserts that the Manufactured Home was permanently attached to the property, no longer considered personal property, and that the purchase money lien could be refinanced with a home equity loan on the real property of which the Manufactured Home was now a part.

Defendant cites to Section 19(1) of the Texas Manufactured Housing Standards Act which

8

states:

> If a manufactured home is permanently affixed or becomes an improvement to real estate, the manufacturer's certificate or the original document of title shall be surrendered to the department for cancellation. The legal description or the appropriate tract or parcel number of the real estate must be given to the department when the certificate or document of title is surrendered. The department may not cancel a manufacturer's certificate or a document of title if a lien has been registered or recorded on the manufactured home. If a lien has been registered or recorded, the department shall notify the owner and each lienholder that the title and description of the lien have been surrendered to the department and that the department may not cancel the title until the lien is released. Permanent attachment to real estate does not affect the validity of a lien recorded or registered with the department before the manufactured home is permanently attached. The rights of a prior lienholder pursuant to a security agreement or the provisions of a credit transaction and the rights of the state pursuant to a tax lien are preserved. The department shall issue a certificate of attachment to real estate to the person who surrenders the manufacturer's certificate or document of title.

Act of June 15, 2001, 77th Leg., R.S. ch 1055, §2, sec. 19(l), 2001 Tex. Gen. Laws 2331, *repealed by* Acts 2001, 77th Leg. ch. 1421 §13, 2001 Tex. Gen. Laws 5020, eff. June 1, 2003.[1]

Defendant cites to Section 19(A) of the Texas Manufactured Housing Standards Act:

> CERTAIN MANUFACTURED HOMES CONSIDERED REAL PROPERTY. (a) A manufactured home that is permanently attached to the real property is classified and taxed as real property if the real property to which the home is attached is titled in the name of the consumer under a deed or contract for sale. A manufactured home is considered permanently attached to real property if the home is secured to a foundation and connected to a utility, including a utility providing water, electric, natural gas, propane or butane gas or wastewater services.

Act of June 15, 2001, 77th Leg., R.S., ch. 1055, §3, sec. 19A, 2001 Tex. Gen. Laws 2331, *repealed by* Acts 2001, 77th Leg. ch. 1421 §13, 2001 Tex. Gen. Laws 5020, eff. June 1, 2003.[2]

Defendant made the loan in question in 2000 so the foregoing provisions do not apply as they were

---

[1]TEX. REV. CIV. STAT.ANN. art. 5221f, §19(l), *repealed by* Acts 2001, 77th Leg. ch. 1421, §13, eff. June 1, 2003.

[2]TEX. REV. CIV. STAT.ANN. art. 5221f, §19(A), *repealed by* Acts 2001, 77th Leg. ch. 1421, §13, eff. June 1, 2003.

9

enacted in 2001 to be effective January 1, 2002. In addition, the procedure to classify a manufactured home as personal or real property was different in 2000 when this transaction occurred than it is today. *See In re Tirey*, 350 B.R. 62 (Bankr. S.D. Tex. 2006)(State law governed issue of whether debtors' manufactured home was real property or personal property for purposes of Bankruptcy Code's anti-modification provision. Manufactured home was personal property under Texas law in effect at the time debtors purchased manufactured home in May, 1999).

It is unclear from the evidence presented whether the Manufactured Home was actually part of the homestead prior to the home equity lending transaction. As such, after reviewing the parties' contentions and the corresponding summary judgment evidence, there are genuine issues of material fact that exist with respect to this particular claim and the application of the applicable manufactured housing and property statutes to the lending transaction in question. Therefore, the Court denies entry of summary judgment on this claim.

An Order of even date will be entered in connection with this Memorandum Opinion.

###